# IN THE UNITED STATES COURT OF FEDERAL CLAIMS
## CONSOLIDATED

| | |
|---|---|
| MVM, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 24-1107 |
| | ) |
| THE UNITED STATES, | ) Filed: June 30, 2025 |
| | ) |
| Defendant, | ) Re-issued: July 14, 2025* |
| | ) |
| and | ) |
| | ) |
| ACUITY INTERNATIONAL, LLC, | ) |
| | ) |
| Defendant-Intervenor. | ) |
| | ) |
| TRAILBOSS ENTERPRISES, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 24-1108 |
| | ) |
| THE UNITED STATES, | ) |
| | ) |
| Defendant, | ) |
| | ) |
| and | ) |
| | ) |
| ACUITY INTERNATIONAL, LLC, | ) |
| | ) |
| Defendant-Intervenor. | ) |

---

* The Court issued this opinion under seal on June 30, 2025, and directed the parties to file any proposed redactions by July 7, 2025. As no party submitted proposed redactions, the Court reissues the opinion publicly in full.

## OPINION AND ORDER

Plaintiffs MVM, Inc., and Trailboss Enterprises, Inc. ("MVM" and "Trailboss," collectively "Plaintiffs") are disappointed bidders on a solicitation issued by the General Services Administration ("GSA" or "Agency") on behalf of the United States Department of Health and Human Services' ("HHS") Office of Refugee Resettlement ("ORR"), which sought transportation services for unaccompanied migrant children. After several rounds of protests at the Government Accountability Office ("GAO") and a voluntary corrective action, Plaintiffs challenged the award in this Court. They allege that GSA should have disqualified the awardee, Defendant-Intervenor Acuity International, LLC ("Acuity"), because it materially misrepresented its technical capabilities and past performance. After hearing oral argument on the parties' dispositive motions, the Government informed the Court that the Agency cancelled the solicitation. It now moves to dismiss the case for lack of jurisdiction, arguing that all claims are moot because there is no longer any procurement to protest. Plaintiffs and Acuity oppose the motion. For the reasons discussed below, the Court **GRANTS** the Government's Motion to Dismiss.

## I.    BACKGROUND

### A.    The Solicitation

This bid protest concerns Solicitation No. 47QMCH23R0001 ("Solicitation" or "RFP") for a contract to secure a national transportation services provider to coordinate travel arrangements for unaccompanied children while in the custody of HHS. Admin. R. ("AR") at 48, 116, ECF No. 30.[1] As explained in the Solicitation, unaccompanied children[2] are referred to ORR by other

---

[1] For ease of reference, citations to the Administrative Record refer to the bates-labeled page numbers rather than the ECF page numbers.

[2] The Government defines an unaccompanied child as "a child who has no lawful immigration status in the United States; has not attained 18 years of age; and, with respect to

2

federal agencies, typically because immigration authorities apprehended them trying to cross the border.  AR 49.  ORR takes care of unaccompanied children until they are transported to appropriate sponsors while their immigration cases proceed.  AR 116.  Travel needs arise when transferring unaccompanied children to their sponsors, between ORR facilities, and during weather or public health emergencies.  AR 183.  At the time of the Solicitation, MVM was the incumbent contractor providing these unaccompanied children transportation and logistics ("UCTL") services.  *See* AR 32.

The Solicitation was issued on November 22, 2022.  AR 78.  The Agency sought to award a single, firm fixed-price level-of-effort contract to be performed from 2023 through 2028.  AR 34–36.  The Solicitation provided that offerors would be evaluated on four factors: (1) Technical Capability, (2) Management, (3) Past Performance, and (4) Price, with all non-price factors being equal in relative importance and, combined, being approximately equal to price.  AR 44–46, 156–57.  For Technical Capability, offerors had to describe how they would ensure their ability to provide uninterrupted coverage for the transportation of unaccompanied children "24 hours a day, seven days a week, 365 days a year."  AR 156.  For Past Performance, offerors had to provide a minimum of three and a maximum of five recent and relevant contract references.  AR 157.

Eight offerors timely submitted proposals in February 2023, including MVM, Trailboss, and Acuity.  AR 1636.  On June 15, 2023, the Agency determined that Acuity was the best-value offeror and awarded it the contract.  AR 2543, 2555.  On the same day, the Agency announced its decision via the System for Award Management.  AR 2555–56.

---

whom, there is no parent or legal guardian in the United States, or no parent or legal guardian in the United States available to provide care and physical custody."  AR 48; *see* 6 U.S.C. § 279(g)(2).

The dispute in this litigation arose over Acuity's references to Comprehensive Health Services, LLC ("CHS") in its Technical Capability and Past Performance volumes. *See* MVM Mot. for J. Admin. R. at 11, ECF No. 34; Trailboss Mot. for J. Admin. R. at 20, ECF No. 38. Acuity is the immediate owner of CHS. AR 2344, 7943. On the first page of its Technical Capability proposal, Acuity stated that "Acuity International, LLC (Acuity), previously Comprehensive Health Services, LLC (CHS), has been in business for 47 years." AR 706. To demonstrate its ability to perform uninterrupted transportation services for unaccompanied children, Acuity referred to its performance of an Emergency Shelter Operations Indefinite Delivery Indefinite Quantity ("ESO IDIQ") contract for ORR, including three task orders ("TOs") under the ESO IDIQ, and an Emergency Temporary Shelter Operations Letter of Agreement ("ETSO LOA") contract. *Id.* On the same page, Acuity stated that on "all three ESO IDIQ TOs, Acuity (as CHS), received EXCEPTIONAL CPARS [Contractor Performance Assessment Reporting System] ratings in ALL evaluation areas" and listed a customer recommendation stating: "I would recommend CHS (Acuity) for similar requirements in the future." *Id.*

In its Past Performance proposal, Acuity listed five contract references, with three discussing Acuity's performance under the same ESO IDIQ and ETSO LOA. AR 768–77. In those references, Acuity did not specifically mention CHS. *See, e.g.*, AR 768–69, 770–71, 772–73. Based on the Agency's request for clarification, Acuity specified that the work for the ESO and ETSO contracts "was performed by Acuity International, LLC's wholly owned subsidiary Comprehensive Health Services, LLC." AR 2344. Acuity also provided the Agency with CPARS reports for its first three Past Performance references, each of which identified CHS as the prime contractor. AR 2347–58.

**B.     This Litigation**

After filing three bid protests before the GAO,[3] MVM filed the instant protest on July 19, 2024, challenging the Agency's decision to award the contract to Acuity.  *See* MVM's Compl., ECF No. 1.  On July 22, 2024, Trailboss filed suit.  *See* Trailboss' Compl., *Trailboss Enters., Inc. v. United States*, No. 24-1108 (Fed. Cl. July 22, 2024), ECF No. 1.  The Court consolidated these cases on July 26, 2024.  *See* Order, ECF No. 12.  MVM and Trailboss then filed Amended Complaints and moved for judgment on the administrative record on August 16, 2024, with both plaintiffs alleging in part that Acuity materially misrepresented CHS's experience as its own.  *See* ECF Nos. 34, 35, 37, 38.

The Government informed the Court on August 26, 2024, of the Agency's intention to take additional corrective action, including its plan to "amend the solicitation to modify requirements, terms and conditions, and evaluation criteria based on changes to needs that have emerged over time."  Def.'s Notice of Corrective Action & Unopposed Mot. to Stay at 1, ECF No. 39.  The Government later added that the Agency planned to issue an amended solicitation that would clarify the evaluation factors, modify the instructions and performance work statements, and add additional reporting requirements.  *See* Def.'s Status Report at 1–2, ECF No. 42.  Thereafter, it would request new proposals, accept and reevaluate re-submitted proposals, and issue a new award decision.  *Id.*  Moreover, the Government represented that the Agency would consider whether Acuity committed a material misrepresentation and whether it should be eliminated from the competition as a result.  *Id.*

---

[3] The GAO dismissed the first protest after GSA announced its intention to take corrective action.  AR 4014–15.  The GAO sustained in part the second protest but rejected MVM's material misrepresentation claim.  AR 6066, 6069 n.5.  MVM withdrew its third protest after the GAO found certain claims untimely, including the material misrepresentation claim.  AR 7796–97.

The Court held a status conference and, agreeing that the corrective action did not moot Plaintiffs' material misrepresentation claim, remanded the matter to the Agency on September 30, 2024, "for the limited purpose of determining whether to exclude [Acuity] from further participation in the instant procurement."  Order at 2, ECF No. 47.  The Court ordered that "the limited remand will address only Plaintiffs' claim that Acuity's proposal included a material misrepresentation, and that Acuity should therefore be excluded from the procurement."  *Id.*  On October 16, 2024, the GSA contracting officer issued a determination memorandum concluding that Acuity did not engage in material misrepresentation.  AR 7800.

Following the determination on remand, the Government filed a Supplement to the Administrative Record, *see* ECF No. 48, and Plaintiffs each filed an Amended Motion for Judgment on the Administrative Record, *see* ECF No. 49-1 (MVM); ECF No. 50 (Trailboss).  The Government and Acuity cross moved for judgment.  *See* ECF No. 58 (Government); ECF No. 59 (Acuity).  After the motions became fully briefed, and the Court held oral argument on January 14, 2025.

However, on April 2, 2025, before the Court issued a merits opinion, the Government filed a Notice of Cancellation.  *See* ECF No. 73.  It notified the Court that "the solicitation at issue in this case has been cancelled and will not be resolicited by the [GSA]."  *Id.* at 1.  Consistent with the Court's order, *see* ECF No. 75, the parties filed a Joint Status Report explaining their positions on whether the cancellation decision warranted dismissal of the protest, with Acuity, Trailboss, and MVM all stating that cancellation did not moot Plaintiffs' material misrepresentation claim. *See* Joint Status Report at 2–5, ECF No. 77.  The Government disagreed and moved to dismiss this action on May 15, 2025.  *See* Def.'s Mot. to Dismiss, ECF No. 78.

In its motion, the Government represents that ORR requested GSA terminate the interagency agreement permitting it to procure UCTL services for ORR and return the funding ORR provided to GSA to support the procurement. *Id.* at 2. The Government argues that because "GSA has no intent or ability to reprocure the [cancelled] services . . . plaintiffs' protest is moot." *Id.* It further represents that "ORR has no intention to reprocure [UCTL] services through another agency"; instead, it plans to "leverage its grant-based standard network of care to provide regular transportation services and is considering working with other federal agencies' existing contracting vehicles for unforeseen transportation needs that exceed the capabilities of the grants." *Id.* at 5 (quotation marks omitted). As such, the Government posits that there is "no reasonable expectation that [the parties' dispute] remains a live case or controversy." *Id.*; *see* Def.'s Reply at 3, ECF No. 82 ("ORR simply has no intent to procure the same or similar services, either on its own or through other agencies.").

Acuity asserts in response that, at some point when the grant-funding and current contracts expire, ORR will need to conduct a new procurement to fulfill its UCTL requirements. Acuity's Opp'n at 1, ECF No. 79. Cancelling the current solicitation, therefore, does not resolve MVM's claim that Acuity should be disqualified from future solicitations for UCTL services. *Id.* (arguing that Plaintiffs' claim seeks to prohibit Acuity from competing "for this [UCTL] work both now and in the future").

Trailboss also argues that the case is not moot because the Government concedes that ORR might still acquire UCTL services. Trailboss' Opp'n, at 4, ECF No. 80. As such, "there are no assurances that [the] violations alleged by Trailboss" and MVM "will not recur." *Id.* "For example, Acuity may rely on the same misrepresentative proposal in the continuation of the UCTL procurement if this Court does not issue a decision on the merits." *Id.* According to Trailboss,

"this Court can still craft a meaningful remedy by ordering the disqualification of Acuity from the procurement and any continuation thereof." *Id.* at 4–5.

MVM's opposition incorporates its position as set forth in the parties' Joint Status Report, where it argued that the disqualification issue is not moot. *See* MVM's Opp'n at 1, ECF No. 81; ECF No. 77 at 3. Similar to Trailboss, MVM contends ORR (or another agency) "could procure" the same services "as contemplated under the GSA solicitation." ECF No. 77 at 4. "[A]ny agency's procurement of the same UCTL services" would simply "be a continuation of this UCTL procurement." *Id.* According to MVM, allowing an agency to cancel a procurement without having disqualified a misrepresenting offeror "would permit misrepresenting offerors to wholly avoid the consequences of their bad acts." *Id.* at 5.

## II.  LEGAL STANDARDS

### A.    Motion to Dismiss for Lack of Subject-Matter Jurisdiction

Before reaching the merits of a plaintiff's action, the Court must first assure itself that it has subject-matter jurisdiction. *See Indep. Rough Terrain Ctr., LLC v. United States*, 172 Fed. Cl. 250, 255 (2024). If the Court determines "at any time" that it lacks subject-matter jurisdiction, it must dismiss the action. RCFC 12(h)(3); *see Folden v. United States*, 379 F.3d 1344, 1354 (Fed. Cir. 2004); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998). Whether challenged at or after the pleadings stage, a plaintiff bears the burden of establishing subject-matter jurisdiction by a preponderance of the evidence. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992); *see also Estes Express Lines v. United States*, 739 F.3d 689, 692 (Fed. Cir. 2014) (citation omitted). To resolve a jurisdictional challenge based on an intervening circumstance, the Court is not limited to allegations in the complaint and should consider post-filing evidence that bears on

the Court's continuing jurisdiction. *See Acetris Health, LLC v. United States*, 949 F.3d 719, 726 (Fed. Cir. 2020).

### B.     Mootness

Apart from establishing the Court's bid protest jurisdiction under the Tucker Act, 28 U.S.C. § 1491(b)(1), a plaintiff must also demonstrate that its claim satisfies Article III's case-or-controversy requirement.  This limitation ensures that federal courts adjudicate only "actual and concrete disputes, the resolutions of which have a direct consequence on the parties." *Monk v. Shulkin*, 855 F.3d 1312, 1316 (Fed. Cir. 2017) ("A case is said to lack an actual or concrete dispute where the relief sought by a plaintiff is satisfied or otherwise rendered moot."); *see DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006) (explaining that the doctrine of mootness "originate[s] in Article III's 'case' or 'controversy' language").  "If an intervening circumstance deprives the plaintiff of a 'personal stake in the outcome of the lawsuit,' at any point during the litigation, the action can no longer proceed and must be dismissed as moot." *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 160–61 (2016).  This is because "mootness . . . is a threshold jurisdictional issue." *Myers Investigative & Sec. Servs., Inc. v. United States*, 275 F.3d 1366, 1369 (Fed. Cir. 2002).  Although established under Article I of the United States Constitution, this Court is constrained by the same justiciability doctrines that limit Article III courts—including mootness. *See Anderson v. United States*, 344 F.3d 1343, 1350 n.1 (Fed. Cir. 2003).

### III.  DISCUSSION

The Court finds that this case is moot.  The remaining dispute raised in Plaintiffs' Amended Complaints concerns whether Acuity made material misrepresentations in its proposal and, if so, whether the Agency should exclude Acuity from competing under the Solicitation.  While this "dispute was very much alive when suit was filed," there is now no procurement left from which

Acuity could be excluded even assuming GSA improperly determined that no material misrepresentation was made. *See Lewis v. Cont'l Bank Corp.*, 494 U.S. 472, 477 (1990); *cf. Advanced Simulation Tech. Inc. v. United States*, 173 Fed. Cl. 587, 594 (2024) (finding that, post-cancellation, "there is no procurement that this court could enjoin").

The Government represents that ORR requested GSA terminate the interagency agreement covering the instant UCTL procurement and return any funds that were provided for that purpose. *See* ECF No. 78 at 8. It further represents that GSA has complied and in fact cancelled the Solicitation. Notice of Cancellation at 1, ECF No. 73. Plaintiffs and Acuity concede that "GSA cancelled the Solicitation." ECF No. 80 at 3; *see* ECF No. 74 at 1. Accordingly, GSA has no authority to reverse the cancellation or reissue the Solicitation, nor any apparent intent to do so. Moreover, the Government confirms that "ORR has no intention to reprocure these services through another agency," ECF No. 77 at 1, and instead will be using existing authorities (*i.e.*, the grant-based standard network of care and existing contracting vehicles) to meet its requirement for UCTL services, ECF No. 78 at 5. Thus, contrary to Trailboss' assertion, this UCTL procurement *has* "definitively concluded." ECF No. 80 at 4. As such, there is "no 'reasonable expectation' that the alleged violation will recur" and "the effects of the alleged violation" "have [been] completely and irrevocably eradicated." *Chapman Law Firm Co. v. Greenleaf Constr. Co.*, 490 F.3d 934, 940 (Fed. Cir. 2007) (quoting *County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979)).

Plaintiffs and Acuity insist that the Government might end up reprocuring the UCTL services sought under the Solicitation at some unknown date in the future, and Trailboss contends that Acuity may again seek to materially misrepresent CHS's prior contract performance as its own. *See* ECF No. 78 at 4 ("ORR *may* still procure the services sought under the UCTL procurement, even outlining its plan for how to acquire those services." (emphasis added)); ECF

No. 74 at 3 ("ORR *could* issue its own solicitation for the transportation services sought by this RFP, and the disqualification issues would again be front and center." (emphasis added)); ECF No. 77 at 5 ("[T]he procurement *could* be continued under ORR or another purchasing agency."); ECF No. 79 at 1 (noting that "it is unclear when" the Government's agreements under the "grant-based standard network of care" and "existing contracting vehicles" will expire "but, when they do, the agency will need to conduct a new competition"); ECF No. 80 at 4 ("Acuity *may* rely on the same misrepresentative proposal in the continuation of the UCTL procurement." (emphasis added)). But these concerns rest on speculation about ORR's possible future procurement decisions, and Acuity's potential participation and conduct in those possible procurements. Beliefs resting upon "contingent future events that may not occur as anticipated, or indeed may not occur at all" are typically insufficient to create a live controversy. *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81 (1985) (quotation marks omitted) (discussing ripeness doctrine). In the context of mootness, future events that "are too attenuated and speculative" do not demonstrate a reasonable expectation that the alleged violation will occur again. *Ebanks v. Shulkin*, 877 F.3d 1037, 1039 (Fed. Cir. 2017); *see Murphy v. Hunt*, 455 U.S. 478, 482 (1982) (per curiam) (holding that a "mere physical or theoretical possibility" of recurrence is insufficient; "there must be a 'reasonable expectation' or a 'demonstrated probability'" (quotations omitted)); *Senate Permanent Subcomm. on Investigations v. Ferrer*, 856 F.3d 1080, 1088 (D.C. Cir. 2017) (same). Again, as noted above, the Government represents that ORR has no present plans to resolicit these services and instead will be acquiring UCTL services going forward without engaging in a new procurement. Plaintiffs do not contest these representations.

Even if ORR does eventually initiate a new procurement of UCTL services in the future, Plaintiffs' request to disqualify Acuity for alleged material misrepresentations in its proposal to

the now-cancelled Solicitation does not reach that far.  In both the oral argument and the parties'

Joint Status Report, Plaintiffs repeatedly represented that their requests for relief in this action

were limited to disqualification "from the instant procurement."  Oral Arg. Tr. at 32:13–15, ECF

No. 70; *see id.* at 35:16–17 ("We're not arguing that Acuity can't compete five years from now on

a whole new competition."); *see also* ECF No. 77 at 3 (affirming position that "Acuity should be

disqualified from the *current* UCTL competition" but "*not every procurement related to

'transportation services for ORR' in perpetuity* as Acuity claims" (emphases in original)).

Plaintiffs' attempt to characterize any hypothetical, future procurement of UCTL services by ORR

as a mere continuation of the instant procurement is unpersuasive.  *See* ECF No. 77 at 4.

As the Government correctly notes, Plaintiffs' argument ignores the well-settled legal

principle that each procurement by an agency stands alone.  *See* ECF No. 82 at 2 (citing *Eskridge

& Assocs. v. United States*, 142 Fed. Cl. 410, 424 (2019), *aff'd*, 955 F.3d 1339 (Fed. Cir. 2020);

*SDS Int'l v. United States*, 48 Fed. Cl. 759, 772 (2001)).  Indeed, courts have consistently held that

the cancellation of a solicitation moots a pending protest, even if an agency intends to initiate a re-

procurement.  *See, e.g.*, *eSimplicity, Inc. v. United States*, 122 F.4th 1373, 1376 (Fed. Cir. 2024);

*Advanced Simulation*, 173 Fed. Cl. at 595 ("'[A]mple precedent exists for dismissing as moot [a]

plaintiff's challenge to the original evaluation and award based on [an agency's] decision to cancel

[a] Solicitation and re-procure.'" (alterations in original) (quoting *Square One Armoring Serv.,

Inc. v. United States*, 123 Fed. Cl. 309, 325–26 (2015) (collecting cases)).  Whatever action a

procuring agency may take with respect to procuring the goods or services sought under a

cancelled or expired solicitation is a separate agency action; it does not save a challenge to the

prior action from becoming moot.  *See eSimplicity*, 122 F.4th at 1376 (holding that appeal

involving challenge to solicitation that the agency allowed to expire, even where the agency

12

proceeded to award contract for the same services under a different solicitation, did not present a live controversy).

Moreover, Plaintiffs present no evidence supporting their supposition that ORR intends to continue the instant procurement merely by having "another agency adopt th[e] procurement as its own." ECF No. 77 at 5. Indeed, the Government represents the opposite. Nor is there any evidence that ORR's cancellation decision was motivated by a desire to "erase [Acuity's alleged] wrongdoing." *Id.* Instead, Plaintiffs' characterization of any future procurement of UCTL services—at some unknown date and by a different agency—as simply a continuation of the instant procurement veers closer to requesting a prospective, blanket disqualification of Acuity, which Plaintiffs affirmatively disavowed.

\*        \*        \*

Whether GSA's decision not to disqualify Acuity from further competition under the Solicitation was arbitrary or capricious is no longer a live controversy because the Solicitation is cancelled. Likewise, the Court cannot meaningfully grant Plaintiffs' request to disqualify Acuity from the instant procurement because that procurement no longer exists. In short, because of an intervening circumstance—here, the cancellation of the Solicitation—the remaining issues presented in Plaintiffs' Amended Complaints "are no longer 'live,'" *Powell v. McCormack*, 395 U.S. 486, 496 (1969), and Plaintiffs have been "deprived . . . of a personal stake in the outcome" of the protest, *eSimplicity*, 122 F.4th at 1376 (quoting *West Virginia v. EPA*, 597 U.S. 697, 719 (2022) (cleaned up)). Thus, the Court must dismiss this action.

## IV. CONCLUSION

For all these reasons, the Court **GRANTS** the Government's Motion to Dismiss (ECF No. 78) and **DENIES AS MOOT** all parties' Motions for Judgment on the Administrative Record

(ECF Nos. 49, 50, 58, 59).  The Court also **GRANTS** Plaintiffs' Motions to Amend Complaints (ECF Nos. 33, 36) and **DENIES AS MOOT** Plaintiffs' original Motions for Judgment on the Administrative Record (ECF Nos. 34, 38).  The Clerk is directed to enter judgment accordingly.

   **SO ORDERED.**


Dated: June 30, 2025                         _/s/ Kathryn C. Davis_____
                                             KATHRYN C. DAVIS
                                             Judge